[Civ. No. 4493. First Appellate District, Division Two.—June 8, 1923.]

## CHAS. E. CLIFFORD, Respondent, v. LEWIS JOHN UTT et al., Appellants.

[1] VENDOR AND VENDEE—RIGHT OF POSSESSION—INTENT.—Upon the sale of real property, the right of possession follows the legal title if the parties intend that the right of possession should be determined by law and not by contract.

[2] ID.—INCOMPLETE CONTRACT—FUTURE NEGOTIATIONS—EVIDENCE.—In this action to recover a sum of money deposited with a title company by the vendee in connection with a real estate transaction, the evidence, including the documents and writings relied upon by defendants, having shown that the parties did not intend to leave to implication of law provisions regarding numerous matters which they had not put into the writings at the time their agreement was signed, but intended to arrive at an agreement regarding such matters at a later date, which they did not do, the trial court properly concluded that, as to those matters, the parties never consummated an agreement, and their contract with reference to the entire subject matter, therefore, was incomplete and unenforceable.

APPEAL from a judgment of the Superior Court of San Diego County. Edgar A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lewis J. Utt, Stephen Connell and Sweet, Stearns & Forward for Appellants.

Sample & Harden and C. E. Spencer for Respondent.

LANGDON, P. J.—This is an appeal by the defendants from a judgment awarding to the plaintiff $2,500. Plaintiff began this action against the Union Title Company of San Diego, alleging that it had received from him said sum for his use and benefit; that plaintiff had demanded the return of said sum, which demand had been refused. The Union Title Company of San Diego, upon order of court, duly

---

1. Implied right of purchaser of realty to possession, note, 4 Ann. Cas. 1018.

made upon motion of the defendant, deposited in court the
amount of money in dispute and Lewis John Utt and Sarah
M. Utt were substituted as defendants. These substituted
defendants filed an answer and cross-complaint, denying
that the money was paid to the Union Title Company for
the use and benefit of plaintiff and alleging that it was
paid as a part of the consideration to be paid by plaintiff
for the purchase from the defendants of a certain tract of
land situated in the county of San Diego, state of Cali-
fornia, and known as "Agua Tibia" ranch, and that the
sum so deposited was deposited by plaintiff not for his own
use and benefit, but for the use and benefit of the defendants.
Defendants also alleged that the plaintiff had breached his
contract with them for the purchase and sale of said ranch,
and that they had suffered damage by reason of said breach
in the sum of $16,500.

At the trial there was but one issue, i. e., whether or not
the plaintiff had entered into a valid and enforceable con-
tract for the purchase of the ranch. The contract relied
upon by defendants consisted of a letter to the Union Title
Company, written by plaintiff, inclosing a check for the
$2,500 in dispute and an authorization to use the same "in
connection with your order No. 93380" when said title com-
pany could issue its unlimited guarantee of title to the said
ranch vested in Union Trust Company of San Diego. The
said letter of plaintiff to Union Title Company then con-
tinues as follows: "Cause Trust Co. to issue declaration of
trust to secure two notes aggregating $80,000; $10,000 due
on or before Feb. 15, 1924, and $70,000 due on or before Feb.
15, 1926, with interest at 6% per annum, from Feb. 15,
1921, payable quarterly said notes to be in favor of Lewis
John Utt and Mrs. Sarah M. Utt said notes may be divided
so as to make four in place of two, to-wit: 2 for $5000.00 and
2 for $35,000.00, otherwise being the same and are to be
signed by Charles E. Clifford and Nettie I. Clifford."

The letter from which the above quotation is made must
be considered in connection with two other documents which,
it is admitted, were also a part of the contract between the
parties. One of these is a so-called memorandum to be at-
tached to escrow instructions relative to sale of Agua Tibia
Rancho, from L. J. Utt and Sarah M. Utt to Charles E.
Clifford. Said memorandum reads, in part, as follows: "For

reference it is agreed that the entire sale price is $100,-000.00, of which sum $20,000.00 shall be paid before conclusion of the escrow; that the remainder shall be secured by the notes covering the property; $10,000.00 being payable on or before February 15, 1924, and the remaining $70,000 on or before February 15, 1926, bearing interest and otherwise according to the terms of said escrow instructions." Then follows a description of the portion of the property to be known as the "House and Springs Tract" and a description of the portion to be known as the "Olive Orchard Tract" and provisions for the release of these tracts from the lien of the trust upon the payment of specified amounts. There are also provisions about releases of water rights, etc., that are not material to our inquiry here. This document is signed by L. J. Utt and Chas. E. Clifford.

The other document to be considered here as a part of the contract is a letter written to the Union Title Company, signed: "Lewis John Utt" and "Sarah M. Utt, by Lewis J. Utt, Agent," which reads in part as follows: "I will hand you a deed executed by myself and wife, Florence G. Utt and Sarah M. Utt to Union Trust Co. of San Diego, of the property hereinafter described and also to include all water and water rights appurtenant thereto which you are authorized to use in connection with your Order No. 93380 when you can issue your unlimited guarantee of title . . . in your usual form on lands known as Agua Tibia Ranch which will show that the title to said property is vested in Union Trust Co. of San Diego. . . . Cause Trust Co. to issue trust to secure 4 notes by Chas. E. and Nettie I. Clifford, 2 of said notes to be for $5,000.00 each due on or before Feb. 15, 1924 and 2 of said notes to be for $35,000.00 each due on or before Feb. 15, 1926, and all drawing interest at 6% per annum payable quarterly, one $5,000.00 and 1 $35,000.00 note being payable to Sarah M. Utt and others to me. . . . Deliver guarantee to Trust Co.

"Additional instructions: Collect $20,000.00 for account of Sarah M. Utt and myself and pay of present mortgage and interest and 2nd half of State and County Taxes 1920–21. Place $100.00 stamp on deed. . . ."

The trial court held that the foregoing instruments, considered together, were so ambiguous as not to constitute a valid and enforceable contract, and particularly so in regard

to the terms of the declaration of trust to be made by the trust company. It was held by the trial court that many of the terms and conditions of said trust declaration had been left undetermined between the parties, to be settled between them by future negotiations, and as such terms and conditions were never agreed upon, no contract between the parties was ever consummated. This ruling was made over the objection and contention of defendants that the contract was sufficiently certain and definite to be enforceable, and that any provisions necessary for the enforcement or carrying out of the purposes of the trust, which were not specifically agreed upon in the writings herein set out would be implied by law.

The reasoning of the trial court was to the effect that if the Union Trust Company made a declaration of trust, holding the property to secure notes evidencing the unpaid balance of the purchase price, and then in trust for Clifford, such declaration of trust, in accordance with the terms of the documents constituting the contract between the parties, would not contain a provision giving to the trustee the power of sale upon default in the payment of the notes or interest, nor would it contain any provision for the possession of the property or the accumulation of the rents and profits, nor for the costs and expenses of the trust and the trustee, nor for the attorney's fees in case of a suit upon the notes or foreclosure of the declaration of trust, or for the payment of taxes. Conceding that strict compliance with the terms of the contract would result in a declaration of trust, which might be enforced in equity, regardless of the absence of provisions for its own enforcement by sale, etc., nevertheless, such a declaration of trust would not be the one intended by the parties. While certain provisions of a contract may be supplied by implication of law, there are no implications of law with reference to provisions that the parties intended themselves to agree upon later.

Particular stress is placed by the trial court upon the proposition that in the absence of such an agreement in a declaration of trust, the trustee in case of default would not have the power to sell the trust property and it would be necessary for the trustee to bring an action in equity to enforce the trust and to have the rights under the contract determined, instead of the proceeding usually provided for

in a trust declaration upon default, giving to the trustee the power of sale upon proper notice without resorting to a suit in equity. (Perry on Trusts, secs. 602b, 602c, 602d.) The trial court concluded upon all the evidence that the parties intended to embody in the trust declaration a provision for sale by trustee in event of default, as well as other provisions to be agreed upon and settled between the parties. This conclusion is reinforced by what the parties actually did, the defendants presenting to the plaintiff for his acceptance an elaborate declaration of trust, providing for sale in the event of default and for many other matters not provided for in the preliminary documents signed by the parties. This would seem to indicate that it was not their intention to rely upon the remedy furnished by law in the absence of special agreement.

The trial court was also influenced in its judgment by the fact that no provision for the possession of the property was made in the agreement between the parties. [1] Appellant argues very convincingly that no provision was necessary upon this matter; that the possession would follow the legal title and is merely an incident of title and need not be specifically mentioned. This would be true, of course, if it had been intended by the parties that the right to possession should be determined by law and not by contract, but as the trial court pointed out, other provisions of the contract, such as the provisions for the payment of taxes, insurance, upkeep, etc., as well as the provisions regarding possession by Clifford contained in the trust agreement later submitted to plaintiff for his approval, all indicate that the parties intended to agree definitely upon the possession and not to allow it to follow the title as a mere incident, and this we conceive to be the crux of the case. [2] The trial court concluded, from all the evidence, including the evidence of the documents relied upon by defendants, that the parties did not intend to leave to implication of law provisions regarding numerous matters which they had not put into writing at the time their agreement was signed, but intended to arrive at an agreement regarding such matters at a later date. As to these matters, they never consummated an agreement, and their contract with reference to the entire subject matter, therefore, was incomplete and unenforceable. As pointed out by the trial court,

the parties continued to negotiate after the signing of the agreement relied upon here, as is evidenced by the fact that the Utts approved a certain declaration of trust containing provisions not mentioned in the earlier agreement and not implied by law and submitted said declaration of trust to Clifford for his approval.

There are no other matters requiring discussion and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 6, 1923.